Stephen G. Stoker (3122)
Stoker & Swinton
Attorneys for Defendants
311 South State Street, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 359-4000
Facsimile: (801) 359-4004
Email: sgstoker@stokerswinton.com

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| MP-OTHA CORPORATION, | : | |
| | : | **ANSWER** |
| Plaintiff, | : | **AND** |
| | : | **COUNTERCLAIM** |
| vs. | : | |
| | : | |
| DOUGLAS E. BAGLEY, and | : | |
| AS AMERICAN AS DOUGHNUTS, INC., | : | Civil No. 2:14-cv-00322 CW |
| | : | |
| Defendants. | : | Judge Clark Waddoups |

## ANSWER

The above-named Defendants, Douglas E. Bagley ("Bagley") and As American as Doughnuts, Inc., ("As American") answer the Complaint of the Plaintiff, MP-Otha Corporation, and allege as follows:

### Responses re Parties

1.  Defendants lack sufficient information to admit or deny paragraph 1, and, therefore, deny the same.

2.  Defendants admit paragraph 2.

3.  Defendants admit paragraph 3.

**Responses re Jurisdiction and Venue**

4. Defendants admit paragraph 4.

5. Defendants admit paragraph 5.

6. Defendants admit paragraph 6.

**Responses to General Allegations**

7. Answering the first sentence of paragraph 7, Defendants admit MP-Otha sells potato flour based Spudnuts doughnut mixes and related products to customers in the United States, lacks sufficient information to admit or deny that MP-Otha has international customers, denies the rest of the first sentence and alleges that some of the Spudnuts doughnut mixes are not potato flour based. Answering the second sentence of paragraph 7, Defendants admits either MP-Otha or some person(s) or entity affiliated with MP-Otha operates a doughnut shore in Galesburg, Illinois, lacks sufficient information to admit or deny allegations about a store in Amarillo, Texas, and denies the rest of the second sentence.

8. Answering paragraph 8, Defendants admit MP-Otha claims to own Registered Trademark Number 2862,270, and lack sufficient information to admit or deny the rest of paragraph 8, and, therefore deny the same.

9. Defendants admit the first sentence of paragraph 9, and allege MP-Otha has consented to As American doing business in support of Bagley's marketing efforts under the License Agreement with MP-Otha, and MP-Otha has consented to As American's continued use of its "Spudnuts" dba in connection with said business activities. Defendants admit the second sentence of paragraph 9, and allege said sales take place under the terms and conditions of the Settlement Agreement and the related License Agreement.

**I.      Responses re Defendants' alleged failure to fulfil their obligations under the Settlement Agreement reached in previous litigation with MP-Otha.**

10.   Answering paragraph 10, Defendants admit they were parties, with Plaintiff and principals of Plaintiff in the two civil lawsuits identified in paragraph 10; allege As American initiated the litigation and alleged trademark infringement and other causes of action against principals of MP-Otha; allege MP-Otha filed a second suit against Bagley and As American and Bagley alleging trademark infringement and other causes of action against Bagley and As American; allege the lawsuits were consolidated under the original case number; allege As American and Bagley denied infringement of MP-Otha's alleged trademarks, and deny the rest of paragraph 10.

11.   Defendants admit the first sentence of paragraph 11.  Answering the second sentence of paragraph 11, Defendants admit the quoted language is a correct quote of part of the language in each of Sections 1.1 and 3.1 of the Settlement agreement, and said language must be interpreted in the context of the rest of the language in those sections and in the entire Settlement Agreement.

12.   Answering paragraph 12, Defendants admit the quoted language is a correct quote of part of the language of Section 3.2 of the Settlement Agreement, allege the wording of the similar part of Section 3.3 is somewhat different than the wording in Section 3.2, and, therefore, deny the rest of paragraph 12, and allege said language must be interpreted in the context of the rest of the language in those sections and in the entire Settlement Agreement.

13.   Answering paragraph 13, Defendants admit the quoted language is a nearly correct quote of part of the language of Section 3.4 of the Settlement Agreement, and allege said language must be interpreted in the context of the rest of the language in those sections and in the entire Settlement Agreement.

14.  Answering paragraph 14, Defendants admit the quoted language is a correct quote of part of the language of Paragraph 1 of the Stipulated Injunction the parties agreed as part of the Settlement Agreement, and allege said language must be interpreted in the context of the rest of the language in the Stipulated Injunction and in the entire Settlement Agreement and related License Agreement.

15.  Answering paragraph 15, Defendants admit the quoted language is a nearly correct quote of part of the language of Paragraph 2 of the Stipulated Injunction the parties agreed as part of the Settlement Agreement, and allege said language must be interpreted in the context of the rest of the language in the Stipulated Injunction and in the entire Settlement Agreement and related License Agreement.

16.  Defendants deny paragraph 1, and allege MP-Otha's counsel, Scott Hilton, worked directly with Bagley and with the Bountiful, Utah Internet technology company i4 to complete the transfer of domain names to MP-Otha.  Answering the second sentence of paragraph 16, Defendants admit As American has not abandoned its Utah business registration for "Spudnuts" with the number in paragraph 16, and allege MP-Otha agreed that As American could keep said registration and use it in the business it conducted in support of Bagley under the License Agreement.

17.  Defendants lack sufficient information to admit or deny paragraph 17, and, therefore deny the same, and allege that most of the listed Internet locations were not posted by or owned by Defendants and, therefore could not be removed by them, that they had no control over those who did post or own them, and allege that MP-Otha's counsel, Scott Hilton, worked directly with Bagley to remove at least some of said Internet postings.

18.  Answering paragraph 18, Defendants admit that Paragraph 4 of the Stipulated

Injunction says: "That the Court retains jurisdiction of this matter and over the parties for the purpose of enforcing this Order", denies the rest of paragraph 18, and alleges the present lawsuit is not brought in the same matter in which the Stipulated Injunction was issued, so the retention of jurisdiction is not effective in this case.

## II. Responses to the Claim that MP-Otha licensed the SPUDNUT Marks to Mr. Bagley in connection with selling MP-Otha's food products, equipment, services.

19. Defendants admit the first sentence of paragraph 19. Answering the second sentence of paragraph 19, Defendants admit the quoted language is a correct quote of part of the language of Section 2.1 of the License Agreement, and allege said language leaves out significant words and concepts contained in Section 2.1, deny the rest of paragraph 19, and further allege the quoted language must be interpreted in the context of the rest of the language in that section and in the entire Settlement Agreement and License Agreement.

20. Answering paragraph 20, Defendants admit the quoted language is a correct quote of part of the language of Section 4.1 of the License Agreement, and allege said language leaves out significant words and concepts contained in that section, deny the rest of Section 20, and further allege the quoted language must be interpreted in the context of the rest of the language in Section 4.1 and in the entire Settlement Agreement and License Agreement.

21. Defendants deny paragraph 21 because it starts with a conclusory statement not justified by the actual language of the Settlement (which does not mention shipping in Section 4), and then quotes a very few words MP-Otha likes out of four separate and lengthy emails which primarily contain complaints of Bagley about the way MP-Otha was doing business under the License Agreement. Defendants allege the quoted language is taken out of context and can only be properly understood by considering it in the context of each of the separate emails from which the limited wording is taken. Defendants do admit that the quoted words appear in the

four separate emails attached to the Complaint as parts of Exhibits "D", "F" and "G", but allege the limited quotes distort what was really going on in that correspondence.

22.  Answering paragraph 22, Defendants admit the quoted language appears in the three cited sections of the License Agreement, denies the rest of paragraph 22, and allege the quotes are so limited and are taken out of context, and can only be understood in the context of the entire Settlement Agreement and License Agreement.

23.  Defendants lack sufficient information to admit or deny paragraph 23, and, therefore, deny the same.

24.  Defendants deny paragraph 24.

25.  Defendants deny paragraph 25.

26.  Defendants deny paragraph 26, and allege Bagley has been involved in many Internet orders which MP-Otha has had Erney and Corey Markosich ship instead of Bagley; further allege that most of the Internet customers with whom Bagley has dealt do not use purchase orders, they just place orders online through MP-Otha's website; and further allege that one of the customers Bagley dealt with, Springfield Grocers, did use purchase orders and sent them directly to MP-Otha and not to Bagley, and that Bagley demanded payment of his commissions on those sales, and MP-Otha finally paid those commissions.

**III.    Responses to the Claim that Despite MP-Otha's support, Mr. Bagley failed to fulfil his obligations under the License Agreement.**

27.  Defendants deny paragraph 27, and allege MP-Otha never gave Bagley the necessary information, shipping account numbers, arrangements for reimbursement of shipping costs and materials necessary for Bagley to do shipping.

28.  Answering paragraph 28, Defendants admit that in the summer of 2013, later than June, Bagley received forty two fifty pound bags of Signature Mix from Honeyville that would

have retailed for $50 per bag if sold in that quantity.  Defendants allege that Bagley was never

billed for those bags of mix, and was told they could be used, in smaller quantities, for sample

bags to prospective customers.  Defendants deny the rest of paragraph 28.

29.  Answering paragraph 29, Defendants lack sufficient information to admit or deny the

claim that MP-Otha began receiving customer complaints in or around September 2013, and,

therefore deny the same, deny Erney Markisich contacted Bagley, and allege Bagley was the one

who contacted Markisich, admit Bagley had not personally shipped any Internet orders, deny

Bagley refused to ship Internet orders, and allege the reason Bagley was not able to ship Internet

Orders was that MP-Otha would not provide Bagley with the necessary information, shipping

account numbers, arrangements for reimbursement of shipping costs and materials for Bagley to

do shipping.

30.  Defendants deny paragraph 30, and allege MP-Otha had used Markisich for shipping

Internet Orders when MP-Otha had mix to ship, but would not provide Bagley with the necessary

information, shipping account numbers, arrangements for reimbursement of shipping costs and

materials for Bagley to do shipping.

31. Answering paragraph 31, Defendants admit Bagley sent the January 9, 2014, email

attached to the Complaint as Exhibit "G" and deny paragraph 31 to the extent is does not

coincide exactly with the language and context of the entire email.

32.  Answering paragraph 32, Defendants admit Bagley met with Erney Markisich on or

about January 14, 2014, and looked at emails concerning customer purchases and deny the rest

of paragraph 32.

33.  Answering paragraph 33, Defendants admit Markisich removed some supplies from

Bagley's warehouse and said he would have to come back later to get more, and deny the rest of

paragraph 33.

34.  Defendants deny paragraph 34.

35.  Defendants deny paragraph 35.

**IV.   Responses to Claim that MP-Otha terminated the License Agreement in accordance with its terms due to Mr. Bagleys' breach.**

36.  Answering paragraph 36. Defendants admit MP-Otha's attorney, Scott Hilton, sent a January 15, 2014, email to Bagley that is part of Exhibit "H" to the Complaint, deny paragraph 36 to the extent its language is not completely consistent with the entirety of the email, deny the allegations in paragraph 36 concerning reasons the email was sent, and deny the rest of paragraph 36.

37.  Answering paragraph 37, Defendants admit Erney Markisich visited Bagley after the January 15 email was sent by Scott Hilton, and deny the rest of paragraph 37.

38.  Answering paragraph 38, Defendants deny that Bagley did not respond to Scott Hilton's email during the 30 days after the email was sent, allege he sent detailed responsive emails to Scott Hilton and Mike Patton on January 22, 2014, and January 28, 2014, in which he counters the claims in Mr. Hilton's email and gives a detailed explanations of his good faith compliance with the License Agreement and of problems with MP-Otha's actions (the January 22 and January 28 emails are attached as part of Exhibit "D" to the Complaint).   Defendants deny the rest of paragraph 38, allege Scott Hilton's January 15 email had no legal effect, and allege Bagley's counsel also responded to Scott Hilton's email with a letter dated February 26, 2014, a copy of which is attached hereto as Exhibit "A" and incorporated herein by reference.

39.  Answering paragraph 39, Defendants admit Scott Hilton send a February 16, 2014, email and certified letter to Bagley that is part of Exhibit "I" to the Complaint, deny paragraph 39 to the extent its language in not completely consistent with the entirety of the email, deny the

8

allegations in paragraph 39 concerning the reasons the email was sent, and deny the rest of paragraph 39.

40.  Defendants deny the first sentence of paragraph 40 because the License Agreement has not been terminated.  Defendants admit the second sentence of paragraph 40.

**V.      Responses to the claim that after the License Agreement was terminated, instead of returning MP-Otha's remaining doughnut mix to MP-Otha, Mr. Bagley sold it to one of MP-Otha's customers and kept the proceeds.**

41.  Defendants deny paragraph 41.

42.  Defendants deny paragraph 42.

43.  Answering paragraph 43, Defendants admit the quoted language is a correct quote of part of the language in Section 7.2 of the License Agreement, and allege said language must be interpreted in the context of the rest of the language in the entire Settlement Agreement the License Agreement, and further allege the License Agreement was not terminated, so Section 7.2 doesn't apply to the circumstances of this case.

44.  Defendants admit paragraph 44, and allege that JohnnyO's is an MP-Otha customer solely because of the hard work of Bagley who spent six months developing the customer relationship with JohnnyO's, including providing samples of mix, encouraging the opening of the store, talking at length to JohnnyO's about how to operate a successful doughnut store, getting JohnnyO's to sign a license agreement with MP-Otha in the middle of the thirty day period mentioned in Scott Hilton's January 15 email (which Bagley immediately sent to MP-Otha) and otherwise helping the customer to succeed.

45.  Defendants admit paragraph 45, and allege the sale was made by Bagley, as a licensee of MP-Otha, as part of Bagley's nurturing and encouragement of the customer relationship with JohnnyO's, and the sale did benefit that customer relationship, for the mutual

benefit of MP-Otha and Bagley.

46.   Answering paragraph 46, Defendants deny the License Agreement has been terminated, and deny the rest of paragraph 46.

47.   Answering paragraph 47, Defendants deny the License Agreement has been terminated, deny the rest of paragraph 47, and allege Bagley is authorized to sell MP-Otha produces as a licensee of MP-Otha.

48.   Defendants admit that it still has the proceeds of the sale to JohnnyO's, deny the rest of paragraph 48, allege the proceeds are $300, and allege MP-Otha is trying, without justification, to make a federal case out of a transaction that would belong in small claims court if there were actually any breach of the License Agreement.

49.   Answering paragraph 49, Defendants admit that for a period of fourteen years, including the years since the Settlement Agreement, Bagley has used a credit card processing machine encoded with the words Spudnut Doughnuts Salt Lake City that are printed on transaction documents produced by the credit card machine, allege that since the date of the Settlement Agreement and the License Agreement, he is entitled to do so as a licensee of MP-Otha, and deny the rest of paragraph 49.

**VI.   Responses to the Claim that following the termination of the License Agreement, Mr. Bagley hs been using MP-Otha's SPUDNUT Marks in commerce without authorization from MP-Otha.**

50.   Answering paragraph 50, Defendants deny the License Agreement has been terminated, admit that over the many months he worked with JohnnyO's to persuade them and encourage them to become a customer of MP-Otha, Bagley offered training and assistance to JohnnyO's, and deny the rest of paragraph 50.

51.   Answering paragraph 51, Defendants deny the License Agreement has been

terminated, admit that during the term of the License Agreement Bagley has sold and offered to

sell doughnut mix and associated training using MP-Otha's SPUDNUT marks, and allege that

since the date of the Settlement Agreement and the License Agreement, he is entitled to do so as

a licensee of MP-Otha, and deny the rest of paragraph 51.

52.   Answering the first sentence of paragraph 52, Defendants deny the License

Agreement has been terminated, admit that As American, although it is a party to the Settlement

Agreement, is not a party to the License Agreement, but allege that MP-Otha has consented to

As American doing business in support of Bagley's marketing efforts under the License

Agreement with MP-Otha, and MP-Otha has consented to As American's continued use of its

"Spudnuts" dba in connection with said business activities, and deny the rest of the first sentence

of paragraph 52.   Answering the second sentence of paragraph 52, Defendants deny the License

Agreement has been terminated, allege Section 7.2 does not apply to the circumstances of this

case, and deny the rest of the second sentence.

53.   Answering paragraph 53, Defendants allege Section 2.1 of the License Agreement

speaks for itself and deny paragraph 53 to the extent it is not fully consistent with all of the

language of Section 2.1, and allege Bagley is authorized to use the SPUDNUT Marks as a

Licensee of MP-Otha.

54.   Answering paragraph 54, Defendants allege Bagley did not himself set up the

website mentioned in paragraph 54, but admit it may have been set up for him many years ago

by one or more of his children as they were trying to help him get the Spudnuts business going,

allege the website language speaks for itself and deny paragraph 54 to the extent the language it

quotes from the website that is not completely consistent with the language of the website, deny

the rest of paragraph 54, and allege that the web address for the website is no longer active.

55. Defendants deny the first sentence of paragraph 55 because no time frame is provided in the sentence so they don't know how to answer it, and they lack sufficient information to admit or deny the rest of paragraph 55 and, therefore, deny the same.

56. Defendants deny the first sentence of paragraph 56 because they are aware that MP-Otha contacted and sued BeLocally, the Internet service provider involved with the website. Defendants deny the second sentence of paragraph 56 because it is not a fact statement but an attempt to interpret the scope of the License Agreement.

57. Answering paragraph 57, Defendants deny the License Agreement has been terminated, deny anything they have done before or since Scott Hilton sent his January 15 and February 16 emails has been a breach of the terms of the License Agreement, and, with regard to the Internet information provided in paragraph 57, Defendants deny they are their "Internet listings" or that they have any control over any of them.

## Responses to Count I
### (Alleged Federal Trademark Infringement – 15 U.S.C. §1114)

58. Defendants incorporate by reference in this paragraph all of their preceding answers to the numbered paragraphs of the Complaint.

59. Defendants lack sufficient information to admit or deny paragraph 59, and, therefore, deny the same.

60. Defendants deny paragraph 60.

61. Defendants deny paragraph 61.

62. Answering paragraph 62, Defendants deny the License Agreement was terminated, and deny the rest of paragraph 62.

63. Defendants deny paragraph 63.

64. Defendants deny paragraph 64.

**Responses to Count II**
**(Alleged False Designation of Origin – 15 U.S.C. §1125(a))**

65.  Defendants incorporate by reference in this paragraph all of their preceding answers to the numbered paragraphs of the Complaint.

66.  Defendants deny paragraph 66.

67.  Defendants deny paragraph 67.

68.  Defendants deny paragraph 68.

69.  Defendants deny paragraph 69.

70.  Defendants deny paragraph 70.

**Responses to Count III**
**(Alleged Common Law Infringement and Unfair Competition – Utah Code Annotated §§13-5a-101 et seq.)**

71.  Defendants incorporate by reference in this paragraph, all of their preceding answers to the numbered paragraphs of the Complaint.

72.  Defendants deny paragraph 72.

73.  Defendants deny paragraph 73.

74.  Defendants deny paragraph 74.

75.  Defendants deny paragraph 75.

76.  Defendants deny paragraph 76.

**Responses to Count IV**
**(Alleged Breach of Contract – Settlement Agreement)**

77.  Defendants incorporate by reference in this paragraph all of their preceding answers to the numbered paragraphs of the Complaint.

78.  Defendants admit paragraph 78.

79.  Defendants deny paragraph 79.

80. Defendants deny paragraph 80.

81. Defendants deny paragraph 81.

82. Defendants deny paragraph 82.

## Responses to Count V
### (Alleged Breach of Contract – License Agreement – Mr. Bagley)

83. Defendants incorporate by reference in this paragraph all of their preceding answers
to the numbered paragraphs of the Complaint.

84. Answering paragraph 84, Defendants admit that since it was executed, the License
Agreement was a valid contract, allege the License Agreement was not terminated, and allege the
License Agreement is still a valid contract.

85. Defendants deny paragraph 85.

86. Defendants deny paragraph 86.

87. Defendants deny paragraph 87.

88. Defendants deny paragraph 88.

## Responses to Count VI
### (Alleged Conversion)

89. Defendants incorporate by reference in this paragraph all of their preceding answers
to the numbered paragraphs of the Complaint.

90. Defendants deny paragraph 90.

91. Defendants deny paragraph 91.

92. Defendants deny paragraph 92.

93. Defendants deny paragraph 93.

## Responses to Count VII
### (Alleged Intentional Interference with Current and Potential Economic Relations)

94.  Defendants incorporate by reference in this paragraph all of their preceding answers to the numbered paragraphs of the Complaint.

95.  Defendants deny paragraph 95.

96.  Answering paragraph 96, Defendants admit JohnnyO's is a current customer of MP-Otha, allege JohnnyO's became an MP-Otha customer solely through the extensive efforts of Bagley, and deny the rest of paragraph 96.

97.  Defendants deny paragraph 97.

98.  Defendants deny paragraph 98.

## General Denial of Allegations Not Admitted in this Answer

99.  Defendants deny all allegations of the Complaint not specifically admitted in this Answer.

## Additional Defenses

100.  MP-Otha's Complaint fails to state a claim upon which relief can be granted.

101.  MP-Otha is in material breach of the requirements of the Settlement Agreement and the License Agreement, and is, therefore, barred from enforcing the same against Defendants.

102.  MP-Otha owes Bagley more money than Bagley received from the small sale of Signature Mix to JohnnyO's, and Bagley is entitled to a setoff of the funds of approximately $300 he received from JohnnyO's against the larger amount of money MP-Otha owes Bagley.

103.  MP-Otha's attempt to terminate the License Agreement had no legal effect, and Bagley remains a licensee of MP-Otha and has been a licensee of MP-Otha at all relevant times.

104.  MP-Otha made up a supposed default under the License Agreement that had not actually occurred, gave a notice of the alleged default without being specific enough in the notice

that Bagley could have responded with a cure if an actual default had occurred, and then purported to terminate the License Agreement based on the non-existent default and the deficient notice.  Those actions of MP-Otha did not result in a termination of the License Agreement.

105.  MP-Otha has breached the implied covenant of good faith and fair dealing in the License Agreement, and is not entitled to any relief against Bagley or As American under the License Agreement.

106.  To the extent any of MP-Otha's claims are based on principles of equity, the claims are barred under the doctrine of in pari delicto, or unclean hands.

107.  MP-Otha's claims are barred under the doctrine of estoppel.

108.  MP-Otha's claims are barred under the doctrine of waiver, ratification and/or acquiescence.

109.  MP-Otha has brought upon itself the problems described in the Complaint, due to its own conduct, and has failed to mitigate its alleged damages.

110.  The claims of MP-Otha are without merit and are not brought in good faith, and Defendants are, therefore, entitled to an award of the attorneys' fees and costs they have incurred in defending this litigation.

111.  Defendants are entitled to an award of attorneys' fees and costs if they are the prevailing parties regarding MP-Otha's claims of infringement or other violations of MP-Otha's trademark rights.

112.  MP-Otha is barred from being a Plaintiff in litigation in the State of Utah, because it transacts business in Utah but it is not qualified to do business in the State of Utah.

WHEREFORE, the Court should deny MP-Otha the relief is seeks in its Complaint, award Defendants their attorneys' fees and costs, and grant Defendants such other relief as the

Court deems just and proper.

## COUNTERCLAIM

Douglas E. Bagley ("Bagley") asserts the following Counterclaim against MP-Otha Corporation ("MP-Otha"), and alleges as follows:

### Parties

1.  Bagley is an individual who resides in Salt Lake County, Utah.

2.  MP-Otha is a corporation that purports to be an Illinois corporation and does business in the State of Utah.

### Jurisdiction and Venue

3.  This court has subject matter jurisdiction of the claims in this Counterclaim pursuant the supplemental jurisdiction set forth in 28 U.S.C. §1367.

4.  This court has personal jurisdiction over the parties because they both transaction business in the State of Utah, Mr. Bagley resides in Salt Lake County, Utah, and MP-Otha has sufficient contacts with the State of Utah for it to be subject to personal jurisdiction in this Court.

5.  Venue is proper in this Court under the provisions of 28 U.S.C. §1391(b), because MP-Otha has initiated this litigation in this Court, MP-Otha regularly transacts business in Utah and a substantial part of the events or omissions giving rise to this claim occurred in Utah.

### First Cause of Action
(Breach of Contract – Settlement Agreement and License Agreement)

6.  Bagley and MP-Otha are parties to a Settlement Agreement and a License Agreement, copies of which are attached to MP-Otha's Complaint as Exhibit "B").

7.  Under the terms of the Settlement Agreement and the License Agreement, Bagley became a licensee of MP-Otha pursuant to the following license provision:

2.1 **License.**  MP-Otha hereby grants Mr. Bagley a worldwide license to use the Spudnut Trademark in connection with the selling, and sub-licensing other Persons to sell, Spudnut Products, related equipment, and consulting services. Such Spudnut Products (including the products created pursuant to Section 8), related equipment, and consulting services shall be supplied only by MP-Otha. Mr. Bagley shall exercise this license only under the control and authority of MP-Otha, as further delineated in this License Agreement.

8. Section 4 of the License Agreement contains the following provisions concerning Internet sales of Spudnut Products:

**4. INTERNET**

**4.1**  Mr. Bagley shall operate and maintain MP-Otha's Internet presence, including all Web sites, and shall be entitled to Commissions from all Internet sales, pursuant to Section 5.  MP-Otha retains ultimate authority to determine Internet pricing, content and presentation.  The domain names SPUDNUT.COM, SPUDOSDONUTS.COM, and related names shall be owned by MP-Otha and point to the same Web site.  The Web site shall list Mr. Bagley's contact information first, i.e., above or before any other listed contract information.  MP-Otha may create additional Web sites to market Spudnut Products, in its sole discretion, in which case Mr. Bagley's contact information shall be listed first on those additional Web sites.

**4.2**  Mr. Bagley shall receive a Commission according to Section 5 for all sales of Spudnut Products made directly through MP-Otha's Web site(s).

9. For the first several months of the term of the License Agreement, MP-Otha did not have doughnut mix available for Bagley to sell using the formulation the parties had agreed would be provided to Bagley

10. As the relationship under the License Agreement went forward, MP-Otha asked Bagley to take over responsibility for shipping Spudnut Products relating to Internet sales.

11. The License Agreement does not require Bagley to be in charge of shipping products, but the parties had repeated discussions about MP-Otha's desire to have Bagley take over the responsibility for shipping.

12. While those discussions were going on, MP-Otha had an arrangement with Utah

residents Erney Markisich and his son Cory Markisich to take care of shipping of Spudnut Products to Internet customers and, presumably, to other customers.

13.  Bagley repeatedly asked MP-Otha for all of the things he would need to be able to take over responsibility for shipping Spudnut Products, including, but not limited to the following:

(a)  MP-Otha's account numbers with shippers (such as Federal Express and UPS), so shipping could be charged to those accounts.

(b)  Complete information about each order, including the date of the order, the name, billing address and shipping address of the customer, confirmation the customer has paid for the order, details about products ordered, and the type of shipping for which the customer paid.

(c)  Bags into which mix and samples could be placed.

(d)  Boxes to be used for shipping (at least two sizes – small ones for samples and larger ones for full mix orders).

(e)  Access to the mixes at Honeyville (MP-Otha's Utah based mixing company), so products can be ordered and be on hand to fill the orders from customers (for chocolate donut mix and old fashioned mix and all of the mixes on the website).

(f)  Clear and complete information about how Bagley would be compensated for his work in relation to shipping, including, but not limited to, information about the prices MP-Otha was paying for mix, and details about how Gross Profits were going to be calculated under the License Agreement.

14.  Although Bagley repeatedly asked for all of those things, MP-Otha never provided them.

15.  As a result of MP-Otha's failure to provide the requested tools necessary for Bagley to take on the responsibility for shipping Spudnut Products, Bagley was never in a position to take on the responsibility of shipping Spudnut Products.

16.  As the term of the License Agreement continued moving forward, Bagley had frequent contacts with existing and prospective customers who wanted to buy Spudnut Products, but MP-Otha would not provide Bagley with the tools he needed to properly service the needs of those customers.

17.  As a general rule, Bagley simply referred those customers to MP-Otha, because he did not have what he needed to take care of their needs.

18.  Under the License Agreement, MP-Otha is obligated to pay Commissions to Bagley for all Internet sales of Spudnut Products and for all sales to customers who meet the definition of Bagley Customers under the License Agreement.

19.  Bagley knew sales of Spudnut Products were being made to Internet customer and to Bagley Customers, and Bagley repeatedly requested payment of his Commissions from MP-Otha.

20.  With the exception of Commissions for a single customer, for which MP-Otha finally responded to Bagely's payment demands and paid some Commission money to Bagley, MP-Otha has not paid the Commissions it is obligated to pay to Bagley, and has refused repeated requests from Bagley for an accounting so the amount of Commission due can be calculated.

21.  On January 15, 2014, Scott Hilton, an attorney for MP-Otha sent Bagley an email (attached as part of Exhibit "D" to the Complaint), in which he vaguely states Bagley has defaulted in his obligations under the License Agreement, and, without being specific about what would be a sufficient cure of the purported defaults, demands that they be cured in thirty days.

22.  On February 16, 2014, Scott Hilton sent an email to Bagley in which he states that the License Agreement is terminated.

23.  On February 26, 2014, Bagley's legal counsel responded with a letter to Mr. Hilton in which he states reasons why the License Agreement as not been terminated.  See copy attached hereto as Exhibit "A".

24.  MP-Otha has breached the terms of the Settlement Agreement and the License Agreement by failing to pay Bagley the Commissions it owes him, and by refusing to provide an accounting from which the amount of the Commissions due can be calculated.

25.  MP-Otha has breached the implied covenant of good faith and fair dealing in the Settlement Agreement and the License Agreement by failing to provide reasonable information and tools to Bagley to perform the functions MP-Otha wants Bagley to perform.

26.  MP-Otha has breached the terms of the Settlement Agreement and the License Agreement by wrongfully attempting to terminate the License Agreement, by fabricating a non-existent alleged breach, failing to give sufficient specifics for Bagley to know what the alleged breach was and what was required for a cure of the alleged breach, and then giving an unjustified notice that the License Agreement had been terminated.

27.  MP-Otha has breached the terms of the Settlement Agreement and the License Agreement by removing Bagley's contact information from MP-Otha's website, by informing customers with whom Bagley had dealt that the License Agreement with Bagley has been terminated, and by interfering with the relationships Bagley had established with the customers of Spudnut Products he was dealing with in such a way that those customer relationships have been damaged, and Bagley has incurred damages as a result.

28.  Bagley is entitled to an award of damages against MP-Otha resulting from said

breaches of contract, in an amount to be determined at trial.

## Second Cause of Action
### (Declaratory Judgment)

29.  Bagley incorporates by reference in this paragraph the allegations of all of the preceding paragraphs in this Counterclaim.

30.  Pursuant to the provisions of Utah Code Annotated, §§78B-6-401, et seq., Bagley is entitled to declaratory judgment from this Court as follows:

(a)  That Bagley was not in default under the Settlement Agreement and the License Agreement on January 15, 2014, when Scott Hilton sent his email to Bagley that purported to declare a breach of the License Agreement and to commence a supposed thirty day cure period.

(b)  That Scott Hilton's January 15, 2014, email was so vague and unclear as to the nature of the alleged breach and as to the specific acts that had to be completed to cure the alleged breach, that it was not effective in giving notice of a breach and did not start a thirty day cure period.

(c)  That Scott Hilton's January 15, 2014, email was not based on an actual breach of the License Agreement, and, therefore, had no legal effect.

(c)  That Scott Hilton's February 16, 2014, email to Bagley did not result in the termination of the License Agreement.

(d)  That the License Agreement has not been terminated, and is still in full force and effect.

(e)  That MP-Otha is obligated to immediately put Bagley's contact information back on all MP-Otha websites so Bagley will be the primary contact for all Internet sales of

Spudnut Products.

### Third Cause of Action
**(Interference with Current and Prospective Economic Relationships)**

31.  Bagley incorporates by reference in this paragraph the allegations of all of the preceding paragraphs in this Counterclaim.

32.  Bagley has spent large amounts of his time and money in good faith efforts under the Settlement Agreement and the License Agreement to build customer relationships that would be mutually beneficial to MP-Otha and Bagley.

33.  MP-Otha has repeatedly created barriers to Bagley's ability to maintain those customer relationships and has directly interfered with many of those relationships in ways that have either caused the relationships to end, or has changed them from relationships that are mutually beneficial to Bagley and MP-Otha, to relationships that are only beneficial to MP-Otha.

34.  Some of those relationships have not only present economic value, but long term economic value.

35.  Bagley is entitled to an award of damages against MP-Otha, in an amount to be determined at trial, resulting from MP-Othas interference with those relationships.

WHEREFORE, Bagley seeks judgments against MP-Otha as follows:

**On the First Cause of Action:**

1.  A judgment for damages, in an amount to be determined at trial, caused by MP-Otha's breaches of the Settlement Agreement and License Agreement.

**On the Second Cause of Action:**

1.  A Declaratory Judgment as follows:

(a)  That Bagley was not in default under the Settlement Agreement and the

License Agreement on January 15, 2014, when Scott Hilton sent his email to Bagley that purported to declare a breach of the License Agreement and to commence a supposed thirty day cure period.

(b)  That Scott Hilton's January 15, 2014, email was so vague and unclear as to the nature of the alleged breach and as to the specific acts that had to be completed to cure the alleged breach, that it was not effective in giving notice of a breach and did not start a thirty day cure period.

(c)  That Scott Hilton's January 15, 2014, email was not based on an actual breach of the License Agreement, and, therefore, had no legal effect.

(c)  That Scott Hilton's February 16, 2014, email to Bagley did not result in the termination of the License Agreement.

(d)  That the License Agreement has not been terminated, and is still in full force and effect.

(e)  That MP-Otha is obligated to immediately put Bagley's contact information back on all MP-Otha websites so Bagley will be the primary contact for all Internet sales of Spudnut Products.

**On the Third Cause of Action:**

1.  A judgment for damages, in an amount to be determined at trial, caused by MP-Otha's interference with Bagley's current and prospective economic relationships under the Settlement Agreement and the License Agreement.

**On all Causes of Action:**

1.  An award of Bagley's attorneys' fees and costs, and such other relief as the Court deems just and proper.

DATED this ___20th___ day of May, 2014.

STOKER & SWINTON

By _____/s/_____
    Stephen G. Stoker,
    Attorneys for Defendants

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby verifies that on May ___20th___ the following will be served a copy of this Answer and Counterclaim electronically through the electronic notification system in effect in the Court's CM/ECF electronic filing system:

    Scott C. Hilton
    R. Jeremy Adamson
    Kunzler Law Group
    8 East Broadway, Suite 600
    Salt Lake City, Utah 84111

_____/s/_____
    Stephen G. Stoker

# EXHIBIT "A"

LAW OFFICES

## STOKER & SWINTON

STEPHEN G. STOKER, L.C.
JEFFREY C. SWINTON, L.C.

A PARTNERSHIP OF PROFESSIONAL COMPANIES
311 SOUTH STATE STREET, SUITE 400
SALT LAKE CITY, UTAH 84111
TELEPHONE (801) 359-4000

TELECOPIER
(801) 359-4004

February 26, 2014

Via email: scott.hilton@kunzlerlaw.com
and United States Mail

Scott C. Hilton
Kunzler Law Group
8 East Broadway, Suite 600
Salt Lake City, Utah 84111

Re:    License Agreement – Douglas Bagley and MP-Otha Corporation

Dear Mr. Hilton:

This firm represents Douglas Bagley.  The purpose of this letter is to set forth in writing Mr. Bagley's position regarding the recent attempts of MP-Otha Corporation ("MP-Otha") to terminate the August 14, 2012, License Agreement between Mr. Bagley and MP-Otha (the "License Agreement").

For the reasons explained below, it is the position of Mr. Bagley that the recent attempts of MP-Otha to terminate the License Agreement have had no legal effect, and that the License Agreement is still in full force and effect.

You sent an email to Mr. Bagley on January 15, 2014.  In the fifth paragraph of your email, you stated the following:

> Per Section 11.7 of the License Agreement, this email constitutes written notice that your failure to service MP-OTHA's Internet orders is a material breach of the License Agreement.  If you do not remedy your breach within 30 days, by February 14th, 2014, the License Agreement shall be terminated, and MP-OTHA shall have all remedies available to it under applicable law.

There is a lot of discussion in your email about whether or not commissions are owed to Mr. Bagley.  That is an important subject that needs to be addressed, but, at least at this point in this discussion, I want to focus on the alleged grounds for termination of the License Agreement.  In addition to the above quoted statements from the fifth paragraph of your email, you stated the following concerning the servicing of Internet orders in other places in your email:

Scott C. Hilton
February 26, 2014
Page 2

---

(In paragraph 1):  Mike has turned the operation of the Internet orders over to you twice and both times you've failed to service the orders.

(In paragraph 1):  If you are not operating MP-OTHA's Internet presence by serving the Internet orders, there's no commission to be made, and you're the one in breach of the agreement.

(In paragraph 3):  Doug, we all want you to be successful and happy with your arrangement, but in order to do well and make commissions, you need to be selling and shipping product.

(In paragraph 5):  Doug, you need to start serving the Internet Orders.

(In paragraph 5):  . . . you can't ignore the Internet orders, which are your primary responsibility under the License Agreement, and expect to get paid or for this relationship to continue.

All of those statements made me want to understand what the License Agreement requires Mr. Bagley to do with regard to Internet orders.  Section 4.1 and 4.2 of the License Agreement contain the provisions directly relating to Internet sales.  They state the following:

4.1  Mr. Bagley shall operate and maintain MP-Otha's Internet presence, including all Web sites, and shall be entitled to Commissions from all Internet sales pursuant to Section 5.  MP-Otha retains ultimate authority to determine Internet pricing, content and presentation.  The domain names SPUDNUT.COM, SPUDOSDONUTS.COM and related names shall be owned by MP-Otha and point to the same Web site.  The Web site shall list Mr. Bagley's contact information first, i.e., above or before any other listed contact information.  MP-Otha may create additional Web sites to market Spudnut Products in its sole discretion, in which case Mr. Bagley's contact information shall be listed first on those additional Web sites.

4.2  Mr. Bagley shall receive a Commission according to Section 5 for all sales of Spudnut Products made directly through MP-Otha's Web site(s).

The only language in these sections that describes Mr. Bagley's obligations is: "Mr. Bagley shall operate and maintain MP-Otha's Internet presence" (emphasis added).  To understand more what that language might mean, I checked the Spudnut website and talked to Mr. Bagley about how things have been set up for Internet sales since the date of the License Agreement.  Here is what I learned through that process:

1. On the home page of the website, there are three buttons in the middle of the menu bar

Scott C. Hilton
February 26, 2014
Page 3

labeled: "Spudnuts Donut Mixes", "Equipment" and "Commercial". The pages accessed by those buttons allow customers to create an account, log in to that account, and place Internet orders. The order placement process is the typical Internet order process of clicking on items the customer wants to purchase to fill a cart, and checking out by paying on line with a credit card. Since the License Agreement was signed, Mr. Bagley has had no involvement in any of that process. It all completely bypasses him. The money paid by the Internet customers all goes directly to an account controlled by MP-Otha. None of it comes to Mr. Bagley. The completed order information goes to Erney Markisich, an employee or independent contractor of MP-Otha. To begin with, none of it came to Mr. Bagley. More recently, some of the order information has come to Mr. Bagley, but not enough for him to fill and ship orders. Under the arrangement in place since the date of the License Agreement, Mr. Markisich and his son Corey have done all of the shipping (not under the direction of Mr. Bagley, but under the direction of MP-Otha). Mr. Bagley has not been involved in shipping orders to either Internet customers or non-Internet customers since the date of the License Agreement.

2. On the far right side of the menu bar on the home page of the website, there is a button labeled "Contact Us". Until recently, Mr. Bagley's phone number was listed on the page that appears when you push that button. Now Mike Patton's phone number is listed instead of Mr. Bagley's phone number. That has been the only place on the website where any information has been listed about Mr. Bagley. From 200 to 300 people have called Mr. Bagley using that number. After talking to them about their interest in Spudnut products, he has either (1) referred them to the order pages of the website, (2) referred them to Mr. Markisich or (3) referred them to MP-Otha. That has been the extent of his involvement in Internet sales since the date of the License Agreement. He has taken one of those three actions with every customer who has called him.

I asked Mr. Bagley what he thought you meant when you said, "Mike has turned the operation of the Internet orders over to you twice and both times you've failed to service the orders." There have been some incomplete efforts by MP-Otha to give Mr. Bagley what he would need to receive information about incoming orders and to package and ship product to customers, but there has never been a time since the License Agreement was signed, despite repeated requests by Mr. Bagley, when Mr. Bagley has had everything he needed to process and ship orders. (He knows exactly what is needed, because, before the settlement of the litigation and the execution of the License Agreement, he did all of the order processing and all of the shipping).

In the discussions about having him take over responsibility for processing orders and shipping product to those who place Internet orders (and perhaps other orders), Mr. Bagley has repeatedly indicated what he would need to take on that responsibility. Those things include the following:

Scott C. Hilton
February 26, 2014
Page 4

_____

     1. Complete information about each order, including the date of the order, the name, billing address and shipping address of the customer, confirmation the customer has paid for the order, details about products ordered, and the type of shipping for which the customer paid.

     2. MP-Otha's UPS account number (and Fedex account number if there is one) so shipping could be charged to MP-Otha.

     3. Bags into which mix and samples could be placed.

     4. Boxes to be used for shipping (at least two sizes – small ones for samples and larger ones for full mix orders).

     5. Access to the mixes at Honeyville, so products can be ordered and be on hand to fill the orders from customers (for chocolate donut mix and old fashioned mix and all of the mixes on the website).

     Although for a few months (since August or September 2013), Mr. Bagley has received some information about orders, he has not always received shipping addresses. He also hasn't consistently received information about whether the customers have paid for shipping and the type of shipping for which they have paid. It wasn't until early February 2014 (more than half way through the supposed thirty day cure period you tried to establish) that MP-Otha finally provided him with its UPS account number. Mr. Bagley has never received bags or boxes to be used in shipping products, and he has never been granted access to the mixes at Honeyville (Mr. Markisich is still the only contact with Honeyville). Mr. Bagley has repeatedly told MP-Otha he could not take on responsibility for processing and shipping orders without all of the tools needed to complete those activities. MP-Otha has never provided Mr. Bagley with the complete package of tools he needs if he is going to take on the responsibility for processing and shipping orders.

     One of the realities facing MP-Otha may be that Mr. Markisich may not want to continue in the business. In mid-January 2014, Mr. Markisich (who works for MP-Otha and not Mr. Bagley) came to Mr. Bagley and told him he was not making any money from his involvement in this business, and he didn't want to continue. He had talked to Mr. Bagley before about Mr. Bagley taking over the responsibility for processing and shipping orders, and talked to him again about it during the January visit. (Mr. Markisich has a full time job at the Salt Lake City airport, so his work on Spudnut business has always been done in the spare time available to him in addition to his full time work schedule elsewhere). As he had done before, Mr. Bagley again told Mr. Markisich the things he would need from MP-Otha before he could take on those responsibilities.

Scott C. Hilton
February 26, 2014
Page 5

---

The License Agreement describes important elements of the contract between Mr. Bagley and MP-Otha by defining "Bagley Customer", "Former Bagley Customer", "Gross Profits", and stating when commissions are due to Mr. Bagley for sales other than those on the Internet. These definitions are tied to the commission structure in Section 5, and the Internet sale provisions in Section 4.1 also tie commissions on Internet sales to Section 5.

After giving specifics about the definition of "Bagley Customer", Section 1.4 says the following:

> The term "Bagley Customer" is for convenience in reference only; all Bagley Customers are customers only of MP-Otha, all contracts with Bagley Customers are between the Bagley Customer and only MP-Otha, Bagley Customers pay only MP-Otha, and Bagley Customers shall be supplied with Spudnut Products, equipment, consulting services, and related goods and services only from MP-Otha. (emphasis added).

Section 1.6.1, in defining three examples of Gross Profits, includes the following in the descriptions of things to be deducted from amounts paid by Bagley Customers to arrive at the amount of Gross Profits (emphasis added):

> 1.6.1 (a)   . . . less the cost to MP-Otha for producing, packaging, transporting, labeling, supplying and handling the mix . . . .

> 1.6.1 (b)   . . . less the cost to MP-Otha for purchasing, modifiying, manufacturing, shipping, handling, installing, and otherwise supplying the equipment.

The significance of these provisions seems to be that the supplier, handler and shipper of sales to Bagley Customers is MP-Otha, not Mr. Bagley. Your January 15 email repeatedly faults Mr. Bagley for not shipping to Internet customers, but the License Agreement makes MP-Otha responsible for shipping, not Mr. Bagley. If MP-Otha wants to change the responsibility for shipping to Mr. Bagley, that should be done by a mutually agreeable written amendment to the License Agreement that sets forth the shipping arrangements that will apply in the future, and not by MP-Otha attempting to informally "turn over" shipping to Mr. Bagley without supplying him with everything he needs to take over that responsibility.

In your January 15 email, you don't provide any information about specific Internet orders or customers who allegedly had not been properly serviced Mr. Bagley. You just make general statements about the alleged failure to service and ship to Internet customers. Those vague statements are surely not sufficient notice to start the clock ticking on a cure period. The License Agreement is a valuable contract, executed as part of a complex litigation settlement. MP-Otha cannot deprive Mr. Bagley of his rights under the Licence Agreement without solid

Scott C. Hilton
February 26, 2014
Page 6

_____

evidence of specific breaches of real obligations followed by an appropriate right to cure. You can't reasonably say to someone they have thirty days to fix a problem, but not tell them what the problem is with enough specificity that they know what they have to do to solve the problem. You and Mr. Bagley exchanged other emails during the supposed thirty day period, but the additional emails from you didn't include any more specifics about what the unacceptable actions of Mr. Bagley had been or any specifics about what he had to do to fix the supposed problems.

On February 16, 2014, you sent an email to Mr. Bagley, followed by a letter with the same wording, in which you claimed the License Agreement was terminated as of February 14, 2014, due to Mr. Bagley's alleged failure to cure his breach of the License Agreement. The February 16 email says Mr. Bagley's alleged breach has caused MP-Otha at least $982.31 in cancelled orders, and at least $394.84 in processing and charge back fees for the cancelled orders. Apparently MP-Otha does have detailed information about specific orders that allegedly encountered some kinds of problems, but even the February 16 email doesn't given any details about the orders, the customers, the timing of the purchases, what went wrong with orders, etc. In any event, none of that information was provided to Mr. Bagley in your January 15 attempt to start a cure period, so he cannot be charged with failing to respond with a cure to the unspecified problems. There was never enough information given to Mr. Bagley about specific alleged failures or breaches for him to do anything in response to the allegations.

It would go without saying that one party to a contract cannot make up an alleged default that really hasn't happened, give a vague notice to the other party about the need to cure the supposed default without really saying what the problem is or what needs to be done to fix it, and then try to terminate the contract because there has not been a cure of the non-existent default. I think that is an appropriate description of what has happened here. There may be a number of things that need to be discussed by these parties to make this License Agreement work better, but there has been no default by Mr. Bagley that would give rise to a right of MP-Otha to seek to terminate the contract.

The issue of the amount of money owed to Mr. Bagley for commissions on Internet sales and sales to other Bagley Customers and Former Bagley Customers is beyond the scope of this letter, but it is an important subject that must be dealt with. Full and complete information about all sales of Spudnut products and MP-0tha's costs needs to be provided, so meaningful conversations can take place about how much is owed to Mr. Bagley.

By way of summary, I think this is where the parties are at this point with regard to MP-Otha's attempt to terminate the License Agreement: (1) your supposed notice to cure lacked enough specific information about alleged breaches of the License Agreement to start the running of a thirty day cure period; (2) the License Agreement does not require Mr. Bagley to handle, transport, ship or supply products, and, instead, requires MP-Otha to do all of those

Scott C. Hilton
February 26, 2014
Page 7

things; (3) your supposed notice that the License Agreement has been terminated has no legal effect because no specific breaches of the License Agreement have been identified, and no cure period has been allowed to deal with any such alleged breaches.

I will be contacting you to talk further about this situation, but I wanted to set forth Mr. Bagley's position in writing, so you and MP-Otha know where he stands with regard to the attempt to terminate the License Agreement. Before the parties jump back into litigation, I would like to talk to you about alternatives to resolving the apparent problems in this contract relationship short of new court action.

Very truly yours,

Stephen G. Stoker

SGS
cc:    Douglas Bagley